of the defendant's liabilities. I should do injustice to both parties, were I, with my present views of the merits of this controversy, to refuse the injunction. Injunction awarded.

At the following sessions, the validity of the patent came on to be tried upon an issue directed to a jury; but after a thorough examination and argument, the jury could not agree and were discharged.

Mr. Hirst and Mr. W. W. Hubbell, having now shewn that a great number of licenses, about to expire within a fortnight, were waiting for renewal upon the decision of the right, and that it was otherwise very important to their client and the publick, that the right should be decided at once; moved for a second trial at this same term, by a new jury selected out of the existing panel, instead of waiting as they would otherwise have to do, until the next session, a term of six months.

Mr. St. G. T. Campbell opposed the application.

GRIER, Circuit Justice. An application of this same sort was made to me in a case while I presided in the district court at Pittsburgh, where the case went off by withdrawing a juror. A decision from one of the Ohio or Indiana courts was then cited in support of the motion. In consequence of that decision, I looked thoroughly into the matter at the time, and was satisfied that the decision was not founded in principles of the common law and was wrong. I have no doubt that a settlement of this patent right, at once, is important, but it cannot be tried now except by consent. There must be a second venire. Motion refused.

On a subsequent day, it having appeared by a communication from the bench that the court, after full argument on the evidence, were divided on the question of infringement, and the jury having been unable to find a verdict, Mr. Hirst and Mr. W. W. Hubbell, moved to dissolve the injunction absolutely. It had been granted by the district judge, they argued, in the absence of his brother, who now after full examination, came to the conclusion that there was no infringement. Had the latter judge been present when the injunction was applied for, the court being divided, would not have granted it; and if it could, would not. A jury had moreover refused to pronounce that there was any infringement. This, supported by the action of the patent office, which regarded the invention as original, and by the patent which gave a prima facie right, made a clear case for a jury alone.

W. H. Seward, St. G. T. Campbell, and S. V. Smith, in favour of continuing the injunction, argued that the act of either judge, sitting for the circuit court, was the act of the court. As a circuit court, each judge is of

absolute equality. It is impossible to say, what the circuit judge's opinion would have been, had he heard the argument for the injunction. That is a matter past and gone, and of which no judical cognizance could now be taken. Each judge was satisfied of the correctness of his own opinion: and whether each chose to rely on his own, or each to defer to his brother's, the court would still be equally divided. In that state of things, what could be done? Simply nothing. The injunction would stand of its own force. The inability of the jury to find a verdict, Mr. Seward argued, was of no significance. They had been summoned to settle the matter, and they had not settled it, but left it where it was. Had they even found a verdict it would have been of little value unless approved by the court, who, if disapproving of it, would have set it aside. No verdict was of no value.

GRIER, Circuit Justice, expressing the high respect he entertained for the opinion of his Brother KANE, particularly upon questions relating to patents, and KANE, District Judge, stating that from the time he found that a difference of opinion existed between him and the presiding judge upon the question of infringement, his inclination was to have the matter disposed of, as if the court had been full when the injunction was applied for; and both members of the court —in the difference of opinion which existed between them, and which it seemed could not be removed—being desirous of protecting both parties to the suit from any errours which might exist by either dissolving absolutely, or absolutely continuing the injunction, made an order to this effect: That the injunction should be dissolved if the defendant in ten days should give security in $10,000 to keep an account, &c. and pay, &c. in case of a final decree being entered against him. On his failure to give such security, then in case the complainant should in ten days afterwards give security in $20,000, the injunction to stand; and in default of his giving such security, to be dissolved without condition.

[For other cases involving this patent, see note to Gibson v. Van Dressar, Case No. 5,402.]

═══════

## Case No. 17,788.

### WILSON v. BASTABLE.

[1 Cranch, C. C. 304.] [1]

Circuit Court, District of Columbia. March Term, 1806.

JUDGMENTS—EQUITABLE RELIEF.

Equity will not relieve against a judgment at law, upon plene administravit, on the ground that the defendant at law could not produce

───────

[1] [Reported by Hon. William Cranch, Chief Judge.]

vouchers to support his plea, unless there be in the bill an allegation of fraud, mistake, surprise, or accident.

Motion to dissolve an injunction, to stay proceedings at law upon a judgment rendered on the issue of plene administravit. The only equity stated in the bill was, that the defendant at law could not support his plea for want of vouchers. No fraud, mistake, accident, or surprise, was alleged.

E. J. Lee cited the case of Wilson v. Bell, 2 Call, 104; Dunlop v. Shelton (before Chief Justice Marshall); Robinson v. Bell, 2 Vern. 146; and Stephenson v. Wilson, Id. 325.

Mr. Swann, for the defendant, cited White v. Bannister's Ex'rs, 1 Wash. [Va.] 168.

Injunction dissolved.

[See Cases Nos. 1,097 and 17,789.]

## Case No. 17,789.

### WILSON v. BASTABLE.

[1 Cranch, C. C. 394.] 1

Circuit Court, District of Columbia. April Term, 1807.

JUDGMENTS—EQUITABLE RELIEF—INJUNCTION.

A general allegation of difficulty in procuring vouchers, or of unavoidable delay in settling an administration account without stating from what circumstances that difficulty and delay arose, is not sufficient ground of equity to enjoin a judgment at law.

E. J. Lee, for plaintiffs, cited 1 Har. Ch. Prac. 33; 1 Fonbl. 13, 34, 340; Silk v. Prime, 1 Brown, Ch. 138, note; Perkins v. Bayntun, Id. 375; Law Va. p. 165, § 33, and Act Va. 1806, respecting mispleading by executors and administrators; also, Waring v. Danvers, 1 P. Wms. 295; Cockroft v. Black, 2 P. Wms. 298; Croft v. Pyke, 3 P. Wms. 183; Jacomb v. Harwood, 2 Ves. Sr. 268; and Robinson v. Cumming, 2 Atk. 411.

Mr. Swann, for defendant.

[See Cases Nos. 1,097 and 17,788.]

CRANCH, Chief Judge. The bill states that the defendant commenced a suit at law against the plaintiffs as administrators of Cumberland Wilson, deceased, upon a promissory note for £100, to which action the plaintiffs pleaded plene administraverunt, "but from the difficulty and unavoidable delay they met with in getting vouchers for those to whom they had paid money for the estate, and getting the estate account settled, they were not able to produce evidence at the trial of the said suit, that they had fully administered, by reason whereof a verdict and judgment were had against them for the debt aforesaid and 40 dollars damages and 13 dollars 33 cents costs." That since the judgment they have settled their administration account with the Dumfries district court, "by which it will appear that they had fully

1 [Reported by Hon. William Cranch, Chief Judge.]

administered the assets which had come to their hands, and that the estate was indebted to them on the 24th of October, 1801, $17,566." That since the said settlement they have received $896, which reduces the balance to $16,570. That at the time the judgment was obtained in October, 1800, there was due to them for money paid by them for the estate more than $17,566. That they have paid the $40 damages and the $13.33 costs, "and that the defendant owes the said Cumberland $60." That the defendant brought suit in this court on the judgment and obtained judgment thereon, without allowing credit for the $40 damages and $13.33 costs, and will proceed to issue execution thereon, unless prevented by a court of equity;—they therefore pray an injunction, and general relief.

An injunction was granted by one of the judges of this court. The answer of the defendant states that his action was founded on an accepted bill of exchange of Cumberland Wilson. That the trial at law was fair, and contends that the plaintiffs are not entitled to relief in equity; it neither admits nor denies the settlement of the administration account, nor the plaintiffs' allegation of difficulty and unavoidable delay in obtaining vouchers and settling their accounts. But it insists that the defendant's claim was among the first to be preferred in marshalling the assets. It neither admits nor denies the payment of $40 damages and costs; but says he is ignorant on that subject, and is willing to admit it, if paid. At March term, 1805, this court ordered the master to state the administration account of the plaintiffs, noting the times of the respective payments, and certifying the vouchers; upon report it appeared that the sums alleged by them to have been paid by them, in the administration of the estate, were principally sums due to themselves, a large part whereof, and more than sufficient to absorb all the assets, was for bills of exchange, upon which Mr. W. Wilson was indorsed, and which he had taken up more than three years before the death of his testator, and more than five years before the trial of the cause in the Dumfries district court. A strong presumption arises from this circumstance that the vouchers were in his own hands—and if any difficulty did arise in obtaining them in time to produce them at the trial at law, it must have arisen from his own negligence. It at least throws the burden of proof on him to show special circumstances of accident, before any equity can arise in his favor. If he had a right to retain all the assets for the satisfaction of his own debt, he might have availed himself of it at law. The bill does not state any one specific fact of accident which prevented him from doing so, and such an accident cannot be presumed, especially in such a case. Excepting the allegation of the payment of the $40 damages and the costs, which were not credited in the second judgment, I see no